MIGUEL J. ARSUAGA, Petitioner, v. DISTRICT COURT OF HUMACAO, Respondent.

No. 827. Argued April 18, 1932.—Decided July 30, 1932.

*Molina, Dubón & Ochoteco* for petitioner. *González Fagundo & González, Jr.,* as *amicus curiae.*

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case involves a question which has been the object of interesting arguments and various decisions in the district courts of the Island. The question is as to the procedure to be followed to collect the costs in a summary foreclosure proceeding brought under the Mortgage Law, where the payment of such costs is secured by the mortgage and a definite amount is stipulated.

Petitioner was the plaintiff in a summary foreclosure proceeding instituted in the District Court of Humacao. In the complaint (*escrito inicial*) filed he alleged that he loaned $5,000 to Cándido Ramírez and his wife. The payment of

the loan was secured by a mortgage on a rural property, as follows:

"(b) In order to secure the payment of the said $5,000, interest thereon at the agreed rate of nine per cent per annum, and an additional sum of $500 for costs, expenses, and attorney's fees in case of judicial claim, the spouses Cándido Ramírez and María Morell Santana constitute a first mortgage, in favor of Miguel J. Arsuaga, on the property described in the first paragraph of this instrument."

The court issued the demand for payment (*requerimiento*) in the usual form, except as to costs. With reference to these, the court ordered:

"... and, furthermore, the defendants shall be informed that they must pay to the plaintiff costs, expenses, and attorney's fees, in such an amount as this court shall fix at the proper time after the corresponding memorandum of costs is presented, which amount shall not exceed $500 and has been secured by mortgage..."

Payment having been demanded from the debtors on March 26, 1932, the creditor moved the court to order the sale at auction of the mortgaged property, on the ground that the time allowed by law for the debtors to pay had elapsed without payment having been made of the amounts claimed, viz.: $5,000 as principal, interest at 9 per cent per annum from July 1st, 1931, to the date of payment, and $500 as costs to be taxed in due course by the court.

At this stage of the proceedings, on March 30, 1931, a memorandum was filed by the plaintiff, of which he served notice on the debtors and which contained the following items:

"Marshal's fees, $12.00; clerk's fees, $5.00; fees of witnesses, .... fees of the registrar of property for the certificate which accompanied the complaint, $2.00; fees of the attorneys for plaintiff, $431.00; marshal's fees for executing the judgment, publication of citations, and deed, $50."

On the following April 2, plaintiff presented to the court his views as to the procedure for recovering costs in summary

foreclosure proceedings, and the court, without hearing again the plaintiff or the debtors at any time, rendered the following:

"ORDER. On reading the memorandum of costs filed in this case by plaintiff, the court reduces to $200 the item for attorney's fees, and approves all the other items, the total amount thereof being reduced to $269."

On the same day, April 4, 1932, the court ordered the sale at public auction of the property and "that the proceeds obtained be paid over to plaintiff in satisfaction of the mortgage credit of $5,000, interest at 9 per cent per annum from July 1, 1930, to the date of the public sale, and the sum of $269, for costs, expenses, and attorney's fees, as appears from the memorandum which has been approved by the court."

It was then that the plaintiff requested this Court to intervene in the case by issuing a writ of certiorari. The preliminary writ was issued and at the hearing, besides petitioner and his attorneys, there appeared the law firm of González Fagundo & González, Jr., of Humacao, as *amicus curiae*.

The *amicus curiae* maintains that the procedure that has been followed is entirely erroneous, and similarly as to the decision of this Supreme Court in the case of *Vidal* v. *District Court*, 40 P.R.R. 100; and it states:

"Our contention is, that the amount fixed for costs in a mortgage deed can be recovered in full upon default of the debtor, no matter what that amount may be. If said amount is insufficient to cover costs and attorney's fees, the creditor is the loser, and must pay for the error in fixing the amount so low; and if it is excessive, the debtor must pay that amount because it is the result of a valid contract between the parties and it is not contrary to the provisions of the Civil Code, or to public order, or good morals."

A paragraph from the Statement (*Exposición de Motivos*) accompanying the Mortgage Law was then cited; also sections 105, 128, and 135, of the Mortgage Law; two paragraphs from the Statement accompanying the Mortgage Law Regulations; articles 175, 169, 170, and 176 of said Regulations; vari-

ous sections of the former Law of Civil Procedure; various decisions of this Court referring to the applicability of the Mortgage Law; the judgments of the Supreme Court of Spain of February 13, 1911, 120 *J.C.* 377, and of April 28, 1916, 136 *J.C.* 297; the case of Vidal, *supra;* and sections 1120 and 1123 of the Civil Code. Its brief shows a careful and elaborate study, deserving the consideration which we have given to it.

The petitioner maintains that payment of the total amount stipulated for costs in the mortgage deed, as well as of the principal of the debt and interest thereon, should be demanded from the debtor, without any intervention on the part of the latter; and that in the event it should be concluded that the holding in the case of Vidal, *supra,* must be confirmed, this Court should establish rules harmonizing the recovery of costs in the summary foreclosure proceeding under the Mortgage Law, with the nature and purpose of said proceeding as the same appear from the Mortgage Law and its Regulations and the Statements accompanying both enactments.

A mortgage directly and immediately subjects the property encumbered, whoever the possessor thereof may be, to the performance of the obligation for the security of which it may have been constituted. Section 105 of the Mortgage Law.

Therefore, as the mortgage in this case was constituted to secure "an additional sum of $500 for costs, expenses, and attorney's fees in case of judicial claim," the mortgaged property became subject directly and immediately to the fulfillment of that obligation.

The debtor having defaulted in the payment of the debt, it was proper for the creditor to enforce his claim by suit, and accordingly he elected the summary foreclosure proceeding authorized by the Mortgage Law and its Regulations.

As article 170 of the Regulations provides that "The judge shall examine the petition and the documents supporting it, and if he shall hold that the requirements of the law have been complied with, he shall make an order, without

further proceedings, summoning the persons who, according to the certificate of the registrar, are in possession of the mortgaged property, whether it is in the hands of the debtor, or whether it has been transferred to a third person in whole or in part, in order that they may make payment of the amount claimed, within a period of 30 days, *with the costs, if the latter should also be secured by the mortgage; warning them that upon their failure to do so the property mortgaged will be sold at auction*" (italic ours), and in this case the costs were secured by mortgage, the court should have ordered that formal demand be made for the payment of the total amount secured.

There is no doubt on this point. In the very case of *Vidal* v. *District Court, supra,* the application of which has given rise to the diversity of views referred to at the beginning of this opinion, the debtor deposited in court the total amount secured by the mortgage and then requested that, in view of such payment and deposit for costs, the amount of such costs should be determined and the proceeding suspended.

The doubt arises as to whether the mortgage creditor is entitled to receive the entire amount stipulated for costs in all cases when compelled to resort to the courts in order to collect his credit, or whether the amount to be recovered is subject to a subsequent determination.

In order to solve the problem, the nature of the summary foreclosure proceeding must be kept in view, and also the intention of the parties as the same appears from the contract itself.

In the Statement accompanying the Law and explaining the reason and scope of the provisions regarding mortgage foreclosure proceedings, the Colonial Minister, Mr. Maura, informed the Cortes as follows:

"But where the voice of experience has been heard with the greatest clamor against the law, demanding immediate relief, is where it refers to the procedure for making mortgage debts effective. Its very complicated character, the uncertainty of results, and its

incalculable cost restrain the investment of capital or suggest usurious conditions; sales with redemption clauses take the place of loans with the object of avoiding all proceedings, to the prejudice of the landowner; interest is stipulated which trebles the capital loaned and perhaps, by the employment of other measures, the debtor is exposed to penal liability, thus converting the sanctity of laws enacted for the punishment of crime, into a vile instrument of avarice against the unfortunate. Distrust causes these means to be employed because the legal procedure does not satisfy the reasonable demands of trade, and to uproot these evils, to furnish land the capital it needs, and to give the lender assurances of prompt and easy recovery of his loans, is the object of the most important reform proposed by the Government, abolishing proceedings which, without positively guaranteeing one's rights, destroy those most sacred. Previous appraisement, uniformity of judicial jurisdiction in all necessary proceedings, only one summons and the immediate sale by auction, are the basis of the new law. We have abolished actions, letters requisitory, writs of attachment on property already mortgaged, incidental issues, simultaneous auctions, and a great many other barriers in the path of territorial credit, which had been placed there with the best of intentions, but which actually only tripped good faith.

In the Statement accompanying the Regulations submitted to the approval of the Queen Regent, the said Colonial Minister stated:

"The entire section which regulates the executory procedure for the collection of mortgage debts, conforms to the ordinary system of judicial procedure, in so far as permitted by the deliberate innovations that the law has sought to introduce in order to release credit from the formalities and ceremonies which frequently sacrifice on the altar of fraud that justice which it was most particularly desired to respect.

"We start from the principles that the mortgage record contained in a registry defines a state of right no less worthy of a presumption of inherent and conclusive legality than that other state which follows a decree of sale in the execution proceedings, with weakened securities and fixed or privileged exceptions or defenses.

"The greatest care has been taken to insure the ease and efficiency of compulsory proceedings, under the responsibility of the claimant, and instead of permitting this intention, of so vital importance to credit, to be frustrated by possible contentions, which in

every case would be restricted or imperfect, everything has been reserved which must be settled by contentious proceedings, in order that any person interested may bring up the question in a declaratory action, which can be done at any time, and a final judgment thereon guaranteed by the means which are added to the ordinary procedure in order to insure the fulfillment thereof.''

Hence Manresa, with his habitual precision and clearness, summed up the reform by saying that it omits the first part of the executory process and begins the judicial proceeding by compulsory process (*vía de apremio*), making it as simple as possible. See Manresa, *Comentarios a la Ley de Enjuiciamiento Civil* (3d ed.), vol. 5, p. 428. It caused this Court to declare: ''Compulsory process (*vía de apremio*) commences after the executory judgment (*sentencia de remate*) has been rendered and consented. So that when the debtor is served with a formal demand (*requerimiento*), he is really being notified of a judgment, and he is granted thirty days to satisfy the same.'' *Perales v. District Court, ante,* pp. 865 872.

The revised Mortgage Law itself also permitted the recovery of costs in summary foreclosure proceedings by providing in this connection, in section 128, as follows: ''The estate the subject of the proceeding shall not be answerable for the costs incurred, unless the amount necessary therefor shall appear of record in the register.'' When it appears of record, a demand for payment shall be ordered including costs as provided in article 170 of the Regulations, and the recovery of costs shall be the logical result of the stipulations of the contract and of the provisions of the law.

That being so, if costs are secured and recoverable in a summary foreclosure proceeding in order that the latter may be prosecuted without hindrance, they must constitute a liquidated sum, previously discussed, agreed to, and fixed by the parties to provide for the case where one of them, the creditor, is forced to institute judicial proceedings to recover his credit. Indeed, this has been the understanding of contracting parties and of the bar of Puerto Rico for nearly

40 years, so that it has become a rule of property that must be respected.

(Mr. Justice Aldrey and Mr. Justice Córdova, who took no part in the decision of the *Vidal* case which we have already mentioned, concur up to this point in the present opinion, and in the last two paragraphs thereof.)

The deviation from the rule was caused by our decision in the case of Vidal, *supra*. There our attention was focused on the merits of the case. No complications in the procedure were involved. When payment was demanded of the debtor he agreed to pay the debt. He only objected to the amount of the costs after depositing the whole sum, as we have said. His contention seemed to be just. Why should the creditor insist in the continuation of the proceeding up to the sale at auction of the mortgaged property in order to collect a debt the amount of which was at his immediate disposal, simply because the debtor requested that the costs be fixed within the amount secured and deposited? The attendant circumstances were such as appealed to the conscience of the Court, and the case was decided by applying the general rules which govern ordinary cases. For that reason, after transcribing the clause of the deed in which the obligation was set forth, we said:

"We find nothing in this language to show the intention of the parties to make the payment of the $1,000 a penalty or a totally liquidated amount. These are the current words by which a creditor receives a guaranty in case he has to resort to judicial reclamation. He was amply secured in this case. Penalties are not favored in the law, and if the parties had desired to make the amount of $1,000 absolutely payable in case of a judicial claim they should have said so more specifically." *Vidal* v. *District Court,* 40 P.R.R. 100, 102.

It is not that in re-examining the decision we find it to be unwarranted. On the contrary, it continues to seem just, at least to us the judges who took part in it, and our conclusion finds support in the commentator Morell who, at page 20, volume 4 of his work *"Legislación Hipotecaria,"* says:

"As is known a mortgage secures, besides the principal, the interest, to the extent of the amount stipulated therefor in the mortgage deed, or that fixed by section 114 of the law, and in certain cases the amount for costs and expenses. The extent of this last liability can not be definitely known beforehand, and the law authorizes the fixing of a maximum amount, it being understood, of course, that if the costs do not reach said maximum, the balance belongs to the debtor, or to a third party favored; and if they exceed the amount fixed, the excess can never affect a third party who is only responsible for the express amount fixed for such purpose. The obligation for costs has another feature, namely, that it is conditional, for if the obligation is voluntarily paid, the costs do not exist, and hence the liability disappears."

Some of our decisions, such as those in *Blásquez* v. *Hernáiz et al.*, 34 P.R.R. 608, and *Anaud* v. *Martínez et al.*, 40 P.R.R. 641, which followed strictly the doctrine of the *Vidal* case, *supra*, could also be cited to support it.

What compels us to overrule the said case of Vidal, *supra*, is the conclusion we have reached as to the nature of the summary foreclosure proceeding established by the Mortgage Law, and as to the intention of the parties in this particular class of contracts—an intention which is clearly inferred from the very terms of the contract when interpreted in the light of the law and its uniform interpretation by the parties to contracts and by the bar in thousands of similar cases since the year 1893, when the Mortgage Law of July 14 of that year became effective in Puerto Rico.

By reason of all the foregoing, the order formally demanding payment rendered by the District Court of Humacao in the foreclosure proceeding, civil cause No. 16439, *Manuel J. Arsuaga* v. *Cándido Ramírez Muñoz and his wife María Morell Santana*, should be annulled, and similarly as to all subsequent proceedings had in said cause, and the case is remanded to the district court in which it originated for further proceedings in accordance with the law.